UNITED STATES of America, Plaintiff–Appellee,

v.

Alejandro CASTELLANOS, Defendant–Appellant.

No. 88–3535.

United States Court of Appeals, Eleventh Circuit.

June 13, 1990.

Mark A. Pizzo, Asst. Federal Public Defender, Tampa, Fla., for defendant-appellant.

Mark Jackowski and Omer G. Poirier, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, VANCE *, Circuit Judge, and PITTMAN **, Senior District Judge.

## ON PETITION FOR REHEARING AND SUGGESTION OF REHEARING EN BANC

882 F.2d 474 (11th Cir.1989)

TJOFLAT, Chief Judge:

In an earlier opinion in this case, *see United States v. Castellanos*, 882 F.2d 474 (11th Cir.1989), we vacated the sentence imposed by the district court and remanded the case to that court for resentencing. Both parties petitioned for rehearing, pointing out factual errors in our opinion. Additionally, the Government's petition made us aware that our legal holding was subject to misinterpretation.[1] After consulting the record, we have decided to grant the parties' petitions for rehearing and to vacate

---

* Judge Robert S. Vance was a member of the panel that heard oral argument but due to his death on December 16, 1989 did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. The problematic statement is the following: "The evidence presented at a trial of [another party] ... cannot be used to fashion appellant's sentence anymore than could testimony adduced at a narcotics trial in another jurisdiction." *Castellanos*, 882 F.2d at 477. We do not reach that issue in our current disposition of the case. In order to dispel possible confusion in this circuit regarding our views on the issue, however, in part II.A of this opinion we take the opportunity to explain the statement.

our prior opinion. We substitute this opinion in its stead and now affirm the sentence imposed by the district court.

### I.

On January 5, 1988, a federal grand jury handed down a two-count indictment against appellant Alejandro Castellanos and others, charging them with (1) conspiracy to possess more than 500 grams of cocaine with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988),[2] and (2) possession of an unspecified quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (1988).[3] On March 10, 1988, Castellanos reached a plea agreement with the Government pursuant to which he pled guilty to count two of his indictment. Castellanos' plea agreement stipulated the following facts:

> On December 3, 1987, pursuant to discussions between co-conspirators and co-defendants Allessandro Ippolito, Marcia Usan, Alejandro Castellanos, Danny Rio and Carlos Carrasco, defendant Alejandro Castellanos and Marcia Usan traveled from Miami to Tampa in an automobile carrying approximately nine ounces [255 grams] of cocaine. Surveillance agents observed Allessandro Ippolito meet Castellanos and Usan at a restaurant in Tampa. A surveillance agent saw Usan remove a white package from the trunk of defendant's automobile and place it in the trunk of Ippolito's automobile. Castellanos was present during this exchange between Ippolito and Usan. Shortly thereafter, Ippolito delivered the cocaine to an undercover Drug Enforcement Agent. Castellanos, Usan, and Ippolito were then arrested. A later chemical analysis of the substance prov[ed] positive for cocaine.

On April 10, 1989, Castellanos went before the district court for sentencing. Since Castellanos' offense occurred after November 1, 1987, his sentence was controlled by the sentencing guidelines promulgated by the United States Sentencing Commission. *See United States v. Burgess,* 858 F.2d 1512, 1514 (11th Cir.1988).

The district court properly determined that Sentencing Guidelines § 2D1.1 (1989) ("Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)") was applicable to Castellanos' offense.[4] Section 2D1.1 provides that the base offense level should vary depending on the type and quantity of narcotics involved in the offense. *See id.* § 2D1.1(a)(3). In the presentence investigation report submitted to the court, the probation officer had found that Castellanos' offense involved over five kilograms

---

2. Section 846 was amended in 1988, but no substantive change was made by the amendment.

3. The indictment provided as follows:

COUNT ONE

From an unknown date until on or about December 3, 1987, in the Middle District of Florida and elsewhere, the defendants

ALLESSANDRO IPPOLITO,
ALEJANDRO CASTELLANOS,
MARCIA USAN,
DANNY RIO and
CARLOS A. CARRASCO

unlawfully, willfully and knowingly did combine, conspire, confederate and agree together and with each other and with persons known and unknown to the Grand Jury to possess with intent to distribute a quantity of cocaine in excess of 500 (five-hundred) grams, a Schedule II, narcotic drug controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and 846.

COUNT TWO

On or about December 3, 1987, in the Middle District of Florida and elsewhere, the defendants,

ALLESSANDRO IPPOLITO,
ALEJANDRO CASTELLANOS, and
MARCIA USAN,

did knowingly and intentionally possess with intent to distribute a quantity of cocaine, a Schedule II narcotic drug controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

4. In this opinion, for convenience, we routinely cite the most recent (1989) version of the Sentencing Guidelines. If a particular guideline was amended in any significant way since the time of Castellanos' offense, however, we note that fact and cite the version then in effect.

of cocaine. Objecting to that finding in the addendum to the report, Castellanos contended that his offense involved only 255 grams as stipulated in his plea agreement. The Government also objected to the probation officer's finding; it contended that the offense involved slightly more than 500 grams of cocaine as charged in the dismissed conspiracy count and as proven through Castellanos' own testimony at the trial of his co-defendant.[5] Thus, the amount of cocaine involved in the offense of conviction became a disputed fact that the district court had to resolve at the sentencing hearing.

The district court, which had presided at the trial of Castellanos' co-defendant and had heard Castellanos' testimony there, adopted the Government's position that over 500 grams of cocaine were involved. Accordingly, the court determined Castellanos' base offense level to be 26. *See id.* § 2D1.1 drug quantity tbl. After factoring in other adjustments for a total offense level of 21, the court placed appellant in Criminal History Category I. The applicable sentencing range for the offense was thus from thirty-seven to forty-six months of incarceration, *see id.* Ch. 5 Pt. A. Declining to grant the Government's motion for a downward departure for substantial assistance rendered to the Government, the district court sentenced Castellanos to a thirty-seven-month term of incarceration to be followed by a three-year term of supervised release. The court explained that it chose the lowest possible end of the sentencing range because of Castellanos' substantial assistance to the Government.

Castellanos now challenges his sentence. He contends that the district court erred in basing his offense level on the total amount of cocaine involved in the two offenses with which he was originally charged rather than on the lesser amount involved in the offense for which he was convicted. According to Castellanos, Sentencing Guidelines § 1B1.3 (1987), which permits consideration of conduct extrinsic to the offense of conviction, denies a criminal defendant the due process of law. Castellanos also contends that the district court erred in refusing to grant the Government's motion for a downward departure. We discuss each contention in turn.[6]

## II.

### A. The Challenge to Section 1B1.3

Under the guidelines, determination of the appropriate offense level is a two-step process: the court first determines which guideline section covers the offense of conviction, *see* Sentencing Guidelines § 1B1.2(a), then determines the applicable offense level in accordance with the "relevant conduct" section—1B1.3, *see id.* § 1B1.2(b). At the time of Castellanos' offense, section 1B1.3(a) instructed a court to consider all "acts and omissions committed or aided and abetted by the defendant ... that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction" in determining

---

**5.** At the trial of co-defendant Marcia Usan, Castellanos testified about the cocaine transaction as follows:

> A. He [the buyer] say, "Okay. First of all, we are going to do the nine ounces," ... and I say, "If you want some more, we go back to Miami. Okay?" He say, "How soon you come back to Miami?" I say, "Tomorrow, and I come back in the same day and bring it back to you nine more ounces cocaine.... [H]e told me, okay, do you think [we could] get more than nine ounces?"
> Q. Hold it. Do you think you could get more than what?
> A. Nine ounces.
> Q. All right.

> A. I say, "If we have cash money, we can give you anything you want. But it has to be cash money." And then he asks me, "What about a half kilo?" See, I have got to explain to Marcia, and she told me, "Maybe."
> Q. So, in other words, do this nine-ounce deal. If everything went well, do nine ounces the next day?
> A. Yes, sir.
> Q. And then if things went well, possibly get into half kilograms?
> A. Yes, sir.

**6.** Additionally, Castellanos submits that section 1B1.3 is impermissibly vague and that it denies equal protection of the laws to defendants charged with narcotics offenses. We have con-

the offense level.[7]

■ Castellanos' due process challenge to section 1B1.3 is essentially threefold. He first argues that section 1B1.3(a) is facially invalid in that it allows a defendant to be sentenced not only for the offense of conviction but also for offenses that did not produce a conviction. According to Castellanos, there results a "distinction without a difference" between conviction and sentence, whereby a defendant may be convicted of a lesser offense under the stringent "beyond a reasonable doubt" standard of proof but sentenced for a more serious offense without the safeguard of the higher burden of proof. While acknowledging that pre-guideline jurisprudence established less rigorous due process requirements for sentencing proceedings than for trial of guilt or innocence, Castellanos asserts that the guidelines require new, more stringent standards.

We disagree. The pre-guideline sentencing model was based on "real offense" sentencing: federal courts considered the actual conduct in which a defendant was engaged and not solely that with which he was charged. *United States v. Scroggins*, 880 F.2d 1204, 1212–13 (11th Cir.1989). This model placed few limits on the scope of the evidence that a court could consider. *Id.; see United States v. Tucker*, 404 U.S.

443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) ("[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."). Although the guidelines adopted something akin to a "charge offense" system, the Sentencing Commission that promulgated them cautions us that the guidelines do not install a pure charge offense system but, rather, one that contains a large number of real offense elements. Sentencing Guidelines Ch. 1, Pt. A introduction 4(a). Indeed, the guidelines explicitly state that extrinsic ("real offense") conduct remains relevant to sentencing, *see id.* § 1B1.2(b).

Under pre-guidelines sentencing law, due process demands were deemed satisfied if the relevant factors were established by a preponderance of the evidence. *McMillan v. Pennsylvania*, 477 U.S. 79, 91–93, 106 S.Ct. 2411, 2419–20, 91 L.Ed.2d 67 (1986). In contrast to the elements that establish a defendant's guilt, which must be proved beyond a reasonable doubt, the extrinsic-conduct factors relevant to sentencing come into play "only after a defendant has been adjudged guilty beyond a reasonable doubt." *See id.* at 92 n. 8, 106 S.Ct. at 2419 n. 8. Although the guidelines themselves do not identify the standard of proof

---

sidered both contentions and find them to be without merit.

**7.** The complete version of section 1B1.3 in force at the time of Castellanos' offense is set out below.

**Relevant Conduct**

To determine the seriousness of the offense conduct, all conduct, circumstances, and injuries relevant to the offense of conviction shall be taken into account.

(a) Unless otherwise specified under the guidelines, conduct and circumstances relevant to the offense of conviction means:

acts or omissions committed or aided and abetted by the defendant, or by a person for whose conduct the defendant is legally accountable, that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction, or (2) are relevant to the defendant's state of mind or motive in committing the offense of conviction, or (3) indicate the defendant's degree of dependence upon criminal activity for a livelihood.

(b) Injury relevant to the offense of conviction means harm which is caused intentional-

ly, recklessly or by criminal negligence in the course of conduct relevant to the offense of conviction.

The more detailed version of section 1B1.3 now in force does not reflect a change in the substance of the section but was designed to clarify and to restate the intent of the original. *See* Amendments to the Sentencing Guidelines Manual of October 1987 § 1B1.3 commentary (Jan. 1988), *reprinted in* Federal Sentencing Guidelines Manual App. C, at 357, 362–63 (1990). Prior to the amendment, as now, the commentary to section 1B1.3 made clear that " '[n]o limitation [would] be placed on the information concerning the background, character, and conduct of a person convicted of an offense ... for the purpose of imposing an appropriate sentence.' 18 U.S.C. § 3577, so long as the information 'has sufficient indicia of reliability to support its probable accuracy.' *United States v. Marshall*, 519 F.Supp. 751 (D.Wis.1981), *aff'd*, 719 F.2d 887 (7th Cir.1983)." *See* Sentencing Guidelines § 1B1.3 commentary (1987).

required for relevant conduct, neither do they suggest "any reason why we must now change the due process calculus simply because the Congress has decided to provide federal sentencing courts with additional guidance." *United States v. Guerra*, 888 F.2d 247, 250–51 (2d Cir.1989). This court is one among many to have concluded that the calculus need not be changed. *See, e.g., United States v. Alston*, 895 F.2d 1362, 1373 (11th Cir.1990); *United States v. Blanco*, 888 F.2d 907, 909 (1st Cir.1989); *Guerra*, 888 F.2d at 250; *United States v. Harris*, 882 F.2d 902, 906–07 (4th Cir.1989). We therefore reject Castellanos' argument that section 1B1.3, on its face, denies a criminal defendant his or her right to due process in sentencing.

■■■■ Second, Castellanos argues that the district court's application of section 1B1.3 violated his right to due process of law. Due process in sentencing demands, of course, that the relevant conduct considered by a court in any given case be supported by an "evidentiary basis beyond mere allegation in an indictment," *United States v. Smith*, 887 F.2d 104, 108 (6th Cir.1989), and that the defendant be given an opportunity to rebut factors that might enhance a sentence, *see Guerra*, 888 F.2d at 251. The guidelines accommodate these demands by establishing an adversarial factfinding process, during which a court may consider any information, including reliable hearsay, regardless of the information's admissibility at trial, provided that there are sufficient indicia of reliability to support its probable accuracy. *See* Sentencing Guidelines § 6A1.3 & commentary. A presentence report prepared by a United States probation officer initiates the process, *see* Sentencing Guidelines § 6A1.1, which we explained fully in *United States v. Wise*, 881 F.2d 970, 972 (11th Cir.1989):

> Once the report is prepared, counsel for both the prosecution and the defense have the opportunity to review it and make objections to any guideline applications that they believe to be erroneous. *See* Committee on the Administration of the Probation System, Judicial Confer-

ence of the United States, Model Local Rule for Guideline Sentencing (1987). The probation officer considers these objections, makes any amendments to the report that may be required, and sets forth in an addendum to the report the objections that remain unresolved. *See* Probation Officer's Manual at 52. Prior to the sentencing hearing, the report and addendum, together with the probation officer's sentencing recommendation, are submitted to the court. *Id.* The presentence report and addendum thus serve the same purpose as a pretrial stipulation in a civil bench trial, the report establishing the factual and legal backdrop for the sentencing hearing and the addendum enumerating the disputed factual and legal issues that the court must resolve.

The final step in the guideline sentencing process is the sentencing hearing. At this hearing, the court engages in a colloquy with both the prosecution and the defense concerning how the guidelines should be applied to the facts of the particular case before the court. In so doing, the court must resolve all factual and legal disputes raised in the addendum to the presentence report—as well as any other objections raised by the parties during the course of the hearing. The court performs this task by making findings of fact and conclusions of law.

This procedure was followed in the current case. Both the Government and Castellanos submitted their written objections to the probation officer's findings concerning the amount of cocaine involved in the total offense. Both parties had—and exercised—the opportunity to argue their objections at the sentencing hearing. The district court resolved the dispute in favor of the Government based on Castellanos' own testimony at his co-defendant's trial, *see supra* note 5. That testimony certainly provided a reliable evidentiary basis to support the district court's finding that over 500 grams of cocaine were involved in the total offense.[8] Thus, the district court's

---

8. We note further that, even though admissibility at trial is not required before the court may

application of section 1B1.3 to Castellanos' case did not deprive him of due process.

■ At this juncture, we pause briefly to explain the statement in our earlier opinion that led to some confusion. We stated that evidence presented at the trial of a third party (other than admissions by the defendant himself) may not be used to fashion a defendant's sentence. We contrasted evidence from the trial of another with evidence presented at the defendant's *own* trial, pointing out that a sentencing court's reliance on the latter is entirely proper: the defendant, who has had the opportunity to cross-examine witnesses and make objections to evidence, cannot object to the court's considering the trial record when fashioning sentence. *Cf. Wise*, 881 F.2d at 972–73. We now make explicit the intended implication of our previous statement: evidence presented at the trial of another may not—*without more*—be used to fashion a defendant's sentence if the defendant objects. In such a case, where the defendant has not had the opportunity to rebut the evidence or generally to cast doubt upon its reliability, he must be afforded that opportunity. It was never the position of this panel that a sentencing court may not consider testimony from the trial of a third party as a matter of law; rather, we were of the view that a sentencing court must follow the procedural safeguards incorporated in section 6A1.3 of the guidelines—safeguards designed to protect the defendant's right to respond to information offered against him and to ensure reliability of the information under consideration.

■ Finally, in this appeal Castellanos argues that the district court, after accepting his plea agreement, could no longer consider, without violating his right to due process of law, conduct other than that to which he stipulated in the agreement. We recognize that the breach of a plea agreement raises serious due process concerns. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"); *United States v. Pelletier*, 898 F.2d 297, 302 (2d Cir.1990) (due process requires government to adhere to terms of plea agreement); *United States v. Harvey*, 869 F.2d 1439, 1443–44 (11th Cir.1989) (court will enforce agreement when defendant or witness has kept his part of bargain).

In Castellanos' case, however, the Government did not breach the plea agreement, nor, after accepting the agreement, did the court: Count One of the indictment was dropped; the Government informed the court of Castellanos' cooperation and moved for a downward departure; the agreement recited Castellanos' understanding that the count to which he was pleading guilty carried a maximum statutory penalty of twenty years imprisonment, and Castellanos' sentence was well under the statutory maximum. This court has already considered and rejected the argument that, under such circumstances, a sentencing court's consideration of conduct extrinsic to the plea agreement is unfair or inequitable. *See United States v. Scroggins*, 880 F.2d 1204, 1212–13 (11th Cir. 1989). We said in *Scroggins:*

> The guidelines clearly indicate that such conduct is relevant to sentencing; thus, appellant by no means received a sentence that he could not have anticipated—to the contrary, appellant could have predicted that the court would so act. Nor did the Government's agreement to drop count one of appellant's indictment somehow impliedly preclude the district court from considering evidence of appellant's other thefts—under guideline sentencing, counsel cannot bind the sentencing discretion of the district judge or cloak the facts to reach a result contrary to the guidelines' mandate.

*Id.* at 1214. We therefore reject Castellanos' contention that the district court's consideration of conduct other than that to which Castellanos stipulated in his plea

---

consider information for sentencing purposes, this evidence would no doubt be admissible under the party-admission exception to the hearsay rule. *See* Fed.R.Evid. 801(d)(2).

agreement deprived him of the due process of law.

### B. The Refusal to Make a Downward Departure

 Castellanos challenges the district court's denial of the Government's motion, pursuant to section 5K1.1, for a downward departure based on Castellanos' substantial assistance to the Government. This court has held that, pursuant to 18 U.S.C. § 3742(a), a defendant may not appeal a court's refusal to make a downward departure. *See United States v. Fossett,* 881 F.2d 976, 979 (11th Cir.1989) (defendant may appeal only upward departure, not refusal to depart downward). In *Fossett,* however, we permitted the appeal because the appellant argued that the district court was not aware of its authority to depart from the guideline sentencing range. We agreed that such a challenge presented a appealable claim. *Id.; see* 18 U.S.C. § 3742(a)(1), (2) (defendant may appeal if sentence was imposed in violation of law or as result of incorrect application of guidelines).

In the current case, Castellanos' challenge is based largely on the merits of the district court's refusal to depart and, as such, would not be appealable. He also points, however, to Sentencing Guidelines § 1B1.7, which states that "[f]ailure to follow [the guidelines'] commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal," *see also* 18 U.S.C. § 3742(a)(2), and asserts that the district court erred in ignoring the commentary to section 5K1.1. We therefore entertain Castellanos' claim only to the extent that it involves a possible misapplication of the guidelines.

Sentencing Guidelines § 5K1.1, as it read prior to a 1989 amendment,[9] provided that "[u]pon motion of the government stating that the defendant has made a good faith effort to provide substantial assistance in the investigation of another person who has committed an offense, the court *may*

depart from the guidelines." (Emphasis added.) The guideline implements the intent of Congress, expressed in the Sentencing Reform Act, that under guideline sentencing a court would still be permitted to impose a sentence below the statutory minimum. *See* 18 U.S.C. § 3553(e) ("Upon motion of the Government, the court *shall have the authority* to impose a sentence below a level established by statute so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." (emphasis added)). Thus, under both the guidelines and the statute, the district court's decision to grant a prosecutor's motion for downward departure is clearly discretionary.

 The commentary accompanying section 5K1.1 states that "substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." This instruction does not nullify the discretion expressly given to the district court by the text of the guideline itself; if it did nullify the court's discretion, the permissive wording of the text would be meaningless and a court would have to depart whenever the government so moved. This would be inconsistent, not only with the guideline text and with the permissive language of 18 U.S.C. § 3553(e), but also with other sections of the same commentary, where we read that a defendant's assistance may fall within "a broad spectrum of conduct that must be *evaluated by the court on an individual basis*" and (2) "*[l]atitude is ... afforded the sentencing judge to reduce a sentence....*" Sentencing Guidelines § 5K1.1 commentary (emphasis added). Thus, despite the commentary's instruction to give weight to the government's assessment, the district court's discretion remains intact. We conclude, therefore, that the court's refusal to grant the Government's motion does not establish that the district court ignored the commentary and, in so doing, misapplied

---

**9.** In 1989, Sentencing Guidelines § 5K1.1 was amended by substituting "provided" for "made a good faith effort to provide." *See* Amendments to the Sentencing Guidelines Manual of October

1987 § 5K1.1 (Nov. 1989), *reprinted in* Federal Sentencing Guidelines Manual App. C, at 357, 506 (1990).

the guidelines' directive to give substantial weight to the Government's motion.

Furthermore, we note that the commentary emphasizes that the government's position is to be accorded substantial weight "where the extent and value of the assistance are difficult to ascertain." *Id.* Such is not the case here, where the district court presided over the trial of the co-defendant against whom Castellanos testified and could judge for itself the extent and value of his assistance.

Our review of the transcript of Castellanos' sentencing hearing indicates that the district court considered the Government's motion, correctly understood that it had discretion to depart or not to depart, and simply chose not to do so. Castellanos' challenge is reduced to a claim that the court erred in exercising its discretion not to make a downward departure, and such a claim is not appealable. *Fossett*, 881 F.2d at 979; *see United States v. Evidente*, 894 F.2d 1000, 1004–05 (8th Cir.1990) (citing *Fossett* and cases from six other circuits).

### III.

For the foregoing reasons, the sentence imposed by the district court is

AFFIRMED.