**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Judith PEREZ, Marjorie Conrade,**
**Defendants–Appellants.**

**No. 90–5779**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

May 14, 1992.

Bruce S. Reich, Coral Gables, Fla., Richard C. Klugh, Jr., Asst. Federal Public Defender, Ft. Lauderdale, Fla., for defendants-appellants.

Linda Collins Hertz, Kathleen M. Salyer, Miami, Fla., for plaintiff-appellee.

Before EDMONDSON, COX and BIRCH, Circuit Judges.

PER CURIAM:

Appellants Marjorie Conrade and Judith Perez were convicted on four counts involving the importation and possession of cocaine. In this appeal, Conrade and Perez contest the district court's decision to allow in certain testimony that the government did not fully disclose before trial. Conrade further contests the admission of evidence concerning her sexual relations and the imposition of the minimum five-year sentence applicable to offenses involving 500 or more grams of cocaine. After a review of these arguments and an examination of the record, we have determined that the judgment should be AFFIRMED in all respects.

## I.  BACKGROUND

In March 1990, Conrade and Perez were stopped and questioned at the Miami International Airport for suspicion of importation of cocaine. After they were taken to a hospital, Conrade and Perez produced 30 and 34 pellets of cocaine, respectively, which they had inserted into their bodily orifices in Columbia and attempted to import into the United States. They were indicted for and convicted of possession with intent to distribute an unspecified amount of cocaine, conspiracy to possess the cocaine, and importation of the cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846, 952(a), 960(a)(1) (1988).

At trial, Conrade and Perez testified that they originally travelled to Columbia at the behest of Johanny Pinedo, a former boyfriend of Conrade who had relatives in Columbia. According to her own testimony, Conrade was "still in love" with Pinedo at the time she and Perez consented to travel to Columbia. Pinedo had invited them to take an expense-paid trip to Columbia, in exchange for which they would reenter the United States while carrying cocaine internally. The appellants testified that they had privately agreed between themselves to take the trip but planned secretly to return without the cocaine. In Columbia, however, they were forced by the Pinedo family to insert pellets into their bodies before being permitted to leave for the United States.

Certain evidentiary rulings, as well as the district court's determination that a statutory minimum sentence was applicable, inspired this appeal. We address each of the appellants' arguments in turn.

## II.  DISCUSSION

### A.  Admission of Government Evidence Not Disclosed Before Trial

■ The first of the appellants' challenges concerns the admission of the testimony (and government references thereto) of the customs officials who initially questioned the appellants. The testimony indicated that Conrade and Perez had made conflicting statements about the circumstances of their travel. Significantly, the officers' accounts also revealed that the appellants had made a series of false and

elaborate exculpatory statements about the legitimate purposes of their trip.

Appellants challenge the admission of evidence as to the exculpatory statements, asserting that the government's pretrial responses to the standing discovery order disclosed less than the full scope of the evidence that the government actually brought out at trial. Rule 16 of the Federal Rules of Criminal Procedure requires the government to disclose the substance of any oral statement by the defendant to a government agent which the government intends to offer in evidence at trial. *See* Fed.R.Crim.P. 16(a)(1)(A). Before trial, the government indicated only its intention to introduce evidence of the appellants' inconsistent statements before and after arrest, their admissions that they had inserted pellets of cocaine, and Conrade's statement that she had travelled at the behest of a boyfriend. At trial, by contrast, the government's emphasis was not on any inconsistencies. Rather, in furtherance of its conspiracy theory, the government's comments and questions illuminated the elaborate character of the appellants' false exculpatory statements.

We review the district court's determination on the admissibility of evidence for an abuse of discretion. *United States v. West*, 898 F.2d 1493, 1499 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 685, 112 L.Ed.2d 676 (1991). In particular, unless we find an abuse of discretion we will not disturb a district court's decision to admit evidence sought to be offered in violation of a discovery order. *United States v. White*, 846 F.2d 678, 691 (11th Cir.), *cert. denied*, 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 568 (1988).

Our review of the court's exercise of discretion in this case benefits from a clear discussion of the matter by the district court. At trial, the court acknowledged the potentially surprising scope of the government's case, but concluded that the government's conduct was minimally permissible:

I must in all candor confess that I considered that [the government] was less than forthright and fully forthcoming in supplying responses to the standing discovery order.... I think the government should have revealed quite a bit more than it did....

\* \* \* \* \* \*

But I don't think that [the government] crossed the borderline here. I don't think that [the government] crossed beyond the permissible scope in this case, because obviously the nature and type of information that was commented upon in opening statement by Government counsel related to information that was sought in the course of an ordinary Customs interrogation at the border and which would presumably be of the nature and type of questions that a Customs agent would elicit.

R4–26. The court at a later time reiterated its determination that the statements in evidence were either "in large measure ... derived from regular routine examination of incoming passengers," or sufficiently covered by the government's Rule 16 disclosures. R4–156. In finding that the defense was sufficiently, albeit minimally, put on notice of the scope of the government's case, the district court acted within its sound discretion.

▆ Indeed, even assuming the government's somewhat spare disclosures violated Rule 16, exclusion of the evidence in issue was by no means compelled. Inasmuch as the defense was aware that the government planned to introduce the conversations at issue, the government did not prejudice the substantial rights of the defendants by omitting to specifically disclose its intention to introduce routine and foreseeably relevant portions of those same conversations. *See, e.g., United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir.1978); *United States v. Rodriquez*, 799 F.2d 649, 652 (11th Cir.1986) (per curiam); *United States v. Chestang*, 849 F.2d 528, 532 (11th Cir.1988). Where the court detects even a clear violation of a discovery order, it must weigh the circumstances surrounding the violation and impose the least severe sanction needed to elicit compliance with its orders. *United States v. Euceda–Hernandez*, 768 F.2d 1307, 1312 (11th Cir.1985).

We have recognized, moreover, that "exclusion of relevant evidence is an extreme sanction." *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989).[1] Given the relative lack of any actual prejudice to the appellants resulting from admission of the contested evidence and the gravity of the remedy they sought in their objections to the district court, it is clear that the district court was well within its discretion in declining to impose the severe sanction of exclusion.

## B. Admission of Conrade's Diary Entries

Conrade also contests the government's proffer of evidence pertaining to Conrade's previous romantic encounters. Conrade's challenge seems most specifically directed at the admission of portions of a diary she had kept in the months prior to her trip.[2] The government's questions focused on portions of the diary that seemed to refer to kissing, dating, and having sexual relations with men other than Pinedo.[3] The government concluded its examination of Conrade in this area with the question: "Your distress over not being with Johanny [Pinedo] was not such that you couldn't see other men during this time?" R4–243. Evidently, then, the government's strategy in exploring these portions was to discredit Conrade's own testimony that she was still in love with Pinedo at the time she and Perez consented to travel to Columbia for him.

On appeal, Conrade argues that the government's proffer of the diary entries constituted an impermissible attack on her chastity. Evidence going to sexual or romantic activity, Conrade points out, has been recognized as creating a singularly pernicious danger of unfair prejudice. *See* Fed.R.Evid. 403; *cf.* Fed.R.Evid. 412 (reflecting policy against admission of evidence of an alleged rape victim's past sexual behavior). This theory, however, provides no basis for reversal in this case. As noted by the district court, the diary containing the objectionable passages had been admitted into evidence without objection. R3–255–56. After failing to object to the admission of the diary and relying on portions of its contents, the appellants may not now be heard to complain about the admission of related portions of the same document. *United States v. Truitt*, 440 F.2d 1070, 1071 (5th Cir.) (per curiam), *cert. denied*, 404 U.S. 847, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971); *Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir.).

It was Conrade who, on direct examination, testified as to her longstanding romantic interest in Pinedo. R–206–08. Conrade herself published a presumably less compromising portion of the diary relating to her romantic interest in Pinedo. *Id.* In light of Conrade's own selective publication of the diary, there was no error in the district court's determination that the portions selected by the government were also relevant and that the probative value of this evidence was not substantially outweighed by any prejudicial effect. It

1. Neither defense attorney moved for the lesser measure of a continuance or notified the court that a grant of additional time would remedy the shortfall in the government's discovery responses. Citing *United States v. Manetta*, 551 F.2d 1352 (5th Cir.1977), defense counsel asked that the government be limited to statements that had been disclosed up to the time of opening argument. R4–20. Construing the defense request as a motion to strike and exclude the government's references to the matter in issue, the district court denied the motion. After the defendants' renewal of their motion at the close of the government's case, the judge again ruled in the government's favor.

2. Conrade appears to further challenge the admission of certain photographs of both herself and Perez in revealing dress. We conclude that there is no merit to Conrade's challenge on appeal to the extent that she objects to the admission of these photographs. The photographs admitted into evidence were relevant to the appellants' arrest, to the issue whether they knew each other, and to the issue whether they had travelled outside the United States prior to their trip to Columbia. The district court was within its discretion in finding that any prejudice flowing from the photographs did not outweigh their probative value. *See* Fed.R.Evid. 403.

3. Illustratively, we note that Conrade chiefly objects to the publication of a diary entry reading: "I saw Adimel, and we did it." R4–241.

therefore was permissible to allow the government to examine Conrade on the issue of her romantic interests during cross-examination, and in so doing to bring out evidence of her relationships with persons other than Pinedo. *See United States v. Beechum*, 582 F.2d 898, 907 (5th Cir.), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1978). We accordingly affirm the district court's denial of Conrade's motion for mistrial and motion to strike testimony as to her diary entries.

## C. *Applicability of Minimum 60–Month Sentence*

■ Conrade also challenges her sentence. At sentencing, the district judge determined over defense objections that the statutory minimum penalty applicable to an offense involving 500 or more grams of cocaine compelled a sentence of sixty months' imprisonment for the appellants. *See* 21 U.S.C. § 841(b)(1)(B)(ii)(II) (1988). This determination aligned with the presentence report submitted in this case, which invoked the statutory range of five to forty years, *see id.*, rather than the default range of zero to twenty years, *see id.* § 841(b)(1)(C), because the total amount of cocaine possessed by both defendants exceeded 500 grams. Conrade contests this determination on grounds that her indictment included neither an exact reference to the statutory provision setting the sentencing range, nor a specification of the amount of cocaine involved.

Conrade argues that an indictment, by its statutory or quantitative references, must put the defendant on notice that enhanced statutory penalties may be invoked. Relying on *United States v. Alvarez*, 735 F.2d 461 (11th Cir.1984), Conrade contends that an indictment lacking an allegation of a specific quantity of controlled substance cannot serve as the basis for an enhanced sentence. In *Alvarez*, this court reversed the district court's imposition of an enhanced penalty where the indictment did not specifically refer to the triggering amount of narcotics involved. *See id.* at 467–68.

However, this court's recent pronouncement in *United States v. Cross*, 916 F.2d 622 (11th Cir.1990) (per curiam), *cert. denied*, —— U.S. ——, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991), clearly forecloses Conrade's reliance on *Alvarez* in contesting her sentence. In *Cross*, this court held that it was proper for the district court to impose the five-year minimum sentence under § 841(b)(1)(B)(vii) even if the indictment failed to allege a specific amount of narcotics involved. *Cross*, 916 F.2d at 623. The *Cross* court's departure from *Alvarez* is explained by the Supreme Court's intervening ruling in *McMillan v. Pennsylvania*, 477 U.S. 79, 84, 91, 106 S.Ct. 2411, 2415, 2419, 91 L.Ed.2d 67 (1986). *McMillan* teaches that the prosecution generally need only prove beyond a reasonable doubt the definitional elements of the offense. *Id.* at 84–86, 106 S.Ct. at 2415–16. Developments in this circuit relative to 21 U.S.C. § 841(a)(1) (1988) have reflected the *McMillan* holding. The rule that has developed in this circuit since the *Alvarez* decision is that the weight or quantity of a controlled substance is not an element of the offense that must be included in a § 841(a)(1) indictment. *United States v. Williams*, 876 F.2d 1521, 1524–25 (11th Cir.1989) (holding that the quantity of controlled substance triggering the enhanced penalties provided at § 841(b) is not an essential element of the § 841(a)(1) offense and is relevant only at sentencing); *Cross*, 916 F.2d at 623 (same). The pre-*McMillan* decision in *Alvarez*, by contrast, specifically relied on the premise that the enhancement-triggering quantity *was* an element of the offense. *Alvarez*, 735 F.2d at 468. Clearly, then, our analysis in light of *McMillan* and *Williams* must differ from that of the *Alvarez* court.

■ Because the quantity of controlled substance triggering the enhanced penalties provided in § 841(b) is relevant only at sentencing, there is no reason that the quantity involved must necessarily appear in the indictment if the defendant is otherwise on adequate notice that enhanced penalties are available. Here, as the district court noted at sentencing, the government's responses to the standing discovery order adequately put the defendants on notice of the quantity of cocaine allegedly

involved. R6–36–37. Furthermore, we note in passing that a familiarity with the rule in *Williams,* which requires that only definitional elements of the offense appear in the indictment, would preclude a negative inference that enhanced penalties were out of the picture simply by virtue of indictment's silence as to quantity.[4]

■ Indeed, notwithstanding *Alvarez's* lack of vitality, Conrade's position is logically at odds with the well-settled rule that factual determinations at sentencing need only be supported by a preponderance of the evidence. *See McMillan,* 477 U.S. at 84, 91, 106 S.Ct. at 2415, 2419. To require the government, whenever it will be seeking a statutorily enhanced penalty, to make an allegation of the quantity involved in the indictment would, in effect, impose upon the prosecution the burden of proving beyond a reasonable doubt certain facts that are relevant not to guilt, but rather only to the severity of punishment. *See id.; Cross,* 916 F.2d at 623. Due process requires that factual determinations at sentencing be supported by a preponderance of the evidence, *McMillan,* 477 U.S. at 91, 106 S.Ct. at 2419; *United States v. Alston,* 895 F.2d 1362, 1373 (11th Cir.1990), and that the defendant be on notice that such an amount is involved as may trigger enhancement. In this case, both of these requirements are met.

■ These same principles foreclose the theory that the district court, while it may choose to invoke an enhanced penalty on the basis of competent proof as to quantity, is nevertheless vested with discretionary authority to bypass statutory enhancement provisions so long as triggering quantities are absent from the indictment.[5] The fundamental flaw in such a theory lies in the premise that a district court has discretion to set aside facts relevant to sentencing that are established by a preponderance of the evidence. Of course, district courts are not empowered to seize upon the absence of unessential allegations in the indictment as a pretext to ignore statutory provisions, when those legislative mandates are brought into the picture by evidence that has been adequately established. Accordingly, in cases like the present, in which the existence of a triggering quantity is established by a preponderance of the evidence and due process requirements are met, courts are constrained to apply the sentencing framework established by statute, notwithstanding absence of quantitative references in the indictment. *See United States v. McCann,* 940 F.2d 1352, 1358 (10th Cir. 1991).

Conrade has failed to cite a case in which this court has ratified the practice of discretionarily bypassing § 841(b)'s enhancement provisions where more than the triggering amount was involved in a conviction under § 841(a). Although the appellant does direct our attention to *United States v. Castellanos,* 904 F.2d 1490 (11th Cir. 1990), any reliance on the holding of that decision is clearly misplaced. In that case, this court affirmed a sentence of less than 60 months despite a specific district court finding that over 500 grams of cocaine were involved in the total offense. Con-

---

**4.** We do not believe that our limitation of *Alvarez* conflicts with this court's recent ruling on a related issue in *United States v. Brantley,* 922 F.2d 741 (11th Cir.1991) (per curiam). There, this court held that a defendant indicted for possession of a unspecified amount of cocaine—and originally sentenced in 1984—could not rely on the quantity of cocaine actually involved in order to establish that his special parole term was improper under the statutes in force at the time of his conviction. *Id.* at 742.

In short, *Brantley* raised an issue distinguishable from that in the instant case. *Brantley* affirmed a sentence imposed in 1984 and presumably calculated with the benefit of the same understanding of § 841(b)'s penalty provisions as that which guided the *Alvarez* court. *See Brantley,* 922 F.2d at 741. By implication, this court deemed the *Brantley* parties *bound* to pro-

ceed under the penalty provisions applicable to unspecified quantities of cocaine. For the reasons elaborated in this opinion, the present rule—as articulated by *Williams*—dictates that a defendant is not deemed notified of what penalty provisions will be available by virtue of the absence of quantities in the indictment. Thus, the indictment's silence as to quantity has no binding effect on what penalty provisions the parties may seek to invoke at the sentencing phase.

**5.** Notably, the district court in the present case expressed a desire to sentence the appellants to less than the five-year statutory minimum, but deemed itself compelled to recognize the quantity actually involved when calculating the sentence. R6–47, 56–57.

## 1576

rade seems to urge us to acknowledge, based on the factual context in *Castellanos*, that we have already implicitly ruled that the district court has discretion to bypass statutory enhancement provisions where they are absent in the indictment.

We disagree with this assessment. *Castellanos* did not, implicitly or otherwise, announce such a rule. The defendant in *Castellanos*, unlike Conrade, was not on notice that his offenses might be brought under the enhancement provisions of § 841(b)(1)(B). On the contrary, the *Castellanos* parties had stipulated in a plea agreement that while 500 grams of cocaine were involved in a *dismissed* conspiracy count brought under 21 U.S.C. § 846, only 255 grams of cocaine were actually possessed in violation of § 841(a)(1). *Castellanos*, 904 F.2d at 1492. Given that only 255 grams were involved in the offense of conviction, the parties clearly did not contemplate that § 841(b)(1)(B) would be invoked—and the government did not seek to augment the United States Sentencing Guidelines with that statutory minimum. Rather, the government urged this court simply to permit extrinsic evidence concerning the related conspiratorial conduct to inform the Sentencing Guideline calculus. The rule in *Castellanos*, that narcotics involved in conduct apart from the offense of conviction may be accounted for in Sentencing Guideline calculations, is of no avail to the appellant here.

In summary, neither decisional precedent nor a coherent interpretation of the requirements of the sentencing process lead us to depart from the rule articulated in *Cross*. In light of our clear holding in *Cross*, the district court acted properly in adhering to the § 841(b) enhancement framework at sentencing.

## III. CONCLUSION

In light of our determination that the district court did not err with respect to the issues raised in this appeal, we AFFIRM.