[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2010
JOHN LEY
CLERK

No. 09-16429
Non-Argument Calendar

_____

D. C. Docket No. 07-00279-CR-CAP-14-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOAQUIN SUAREZ FLORES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 30, 2010)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Joaquin Suarez Flores ("Suarez") appeals his total 304-month sentence for

conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§

846 and 841(a)(1) & (b)(1)(A)(ii), and conspiracy to launder money, in violation of

18 U.S.C. § 1956(h). On appeal, Suarez argues: (1) for the first time, that the district court violated his Eighth Amendment rights by imposing a sentence that constitutes cruel and unusual punishment; and (2) that the district court erred in considering relevant conduct under U.S.S.G. § 1B1.3 in determining his base offense level. After careful review, we affirm.

We review the legality of a sentence de novo. United States v. Moriarty, 429 F.3d 1012, 1023 (11th Cir. 2005). We review the sentencing court's application of the Sentencing Guidelines to the facts de novo, and the court's factual findings for clear error. United States v. Ellis, 419 F.3d 1189, 1192 (11th Cir. 2005). Nevertheless, we review for plain error arguments which the defendant failed to raise below. United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005). Plain error exists if defendant satisfies his burden of showing that there was (1) error; (2) that is plain; (3) affects the defendant's substantial rights in that it affected the outcome of the trial; and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.

First, we are unpersuaded by Suarez's argument -- which he did not raise below -- that the district court plainly erred by imposing a sentence that constitutes cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment forbids infliction of "cruel and unusual punishments." U.S. Const.

2

amend. VIII.  In terms of non-capital sentences, the Eighth Amendment contains a "narrow proportionality principle," which would "come into play" in only extreme instances.  Ewing v. California, 538 U.S. 11, 20-21 (2003) (quotations omitted). Thus, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."  Id. at 21 (quotation and brackets omitted).

We employ a two-step analysis in determining whether a defendant's non-capital sentence violates the Eighth Amendment.  First, we "must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed."  United States v. Johnson, 451 F.3d 1239, 1243 (11th Cir. 2006) (quotation omitted).  The defendant has the burden to show the alleged gross disproportionality.  Id.  Second, after the defendant meets the threshold showing, we "must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions."  Id. (quotation omitted).  A sentence within the statutory limit is generally neither excessive nor cruel and unusual under the Eighth Amendment. See id. at 1243-44 (holding that, because the district court sentenced defendant within the statutory limits, defendant had failed to make a threshold showing of

3

disproportionality, and, thus, we did not need to consider the second step in rejecting defendant's Eighth Amendment challenge).

In this case, the district court did not err, much less plainly err, in imposing a total sentence of 304 months' imprisonment. Indeed, because a sentence within the statutory limits generally does not violate the Eighth Amendment, and because the district court sentenced Suarez within the statutory maximum of life imprisonment under Count One, Suarez fails his initial burden to show that his total 304-month sentence is grossly disproportionate to his offense. See id. While Suarez asserts on appeal that his total sentence is grossly disproportionate compared to his limited role in the conspiracy, particularly because he did not receive much financial compensation and had no direct access to the drug proceeds found inside the truck, the district court already accounted for his limited role as a transporter by imposing a downward variance from his guideline sentencing range. Further, as explained below, Suarez was held accountable for his own admitted conduct of transporting approximately $3.5 million in drug proceeds, although the district court arguably could have held him accountable for much higher amounts based on the drug ledgers the government seized. In short, Suarez has failed to show that the sentence, which rests within the statutory range, is grossly disproportionate to his offense to constitute cruel and unusual punishment under the Eighth Amendment,

4

and since Suarez fails to make a threshold showing of disproportionality, we need not engage in the second step of conducting a comparative analysis. See id. at 1243.[1]

We also reject Suarez's claim that the district court erred in considering relevant conduct under U.S.S.G. § 1B1.3 to determine his base offense level. A court uses a two-step process in determining the appropriate offense level under the Sentencing Guidelines. United States v. Castellanos, 904 F.2d 1490, 1493 (11th Cir. 1990). The court must first determine "which guideline section covers the offense of conviction," and then ascertain "the applicable offense level in accordance with the relevant conduct section -- 1B1.3." Id. (quotation omitted).

The guideline provision corresponding to Suarez's base offense level for both counts, U.S.S.G. § 2D1.1(a) (2008), refers to the Drug Quantity Table in § 2D1.1(c) to determine defendant's base offense level, so long as the offense of

---

[1] While asserting the Eighth Amendment violation, Suarez makes the following unrelated arguments in passing, namely, that: (1) the district court erred in denying him safety-valve relief and a minor-role reduction, and in applying the obstruction-of-justice enhancement, based on facts not found by the jury nor proven beyond a reasonable doubt; (2) he was unaware of the exact amount of drug proceeds in the truck; and (3) the district court was "stripped" of its discretion and forced to apply the Guidelines in a mandatory fashion at the expense of the 18 U.S.C. § 3553(a) factors. However, Federal Rule of Appellate Procedure 28 provides that the argument section of an appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed.R.App.P. 28(a)(9)(A). We "may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief" because "[w]ithout such argument the issue is deemed waived." United States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006). Suarez waived the additional arguments that he raises in passing by failing to provide substantive arguments in support in his brief.

conviction does not involve death or serious bodily injury resulting from the use of the contraband. U.S.S.G. § 2D1.1(a). Under U.S.S.G. § 2D1.1(c), a defendant's base offense level is 38, which is the highest level available, if the offense involves 150 kilograms or more of cocaine. U.S.S.G. § 2D1.1(c)(1).

We have held that "[p]roper calculation of the Guidelines sentencing range requires consideration of all relevant conduct." United States v. Chavez, 584 F.3d 1354, 1367 (11th Cir. 2009). Under U.S.S.G. § 1B1.3, the relevant criminal conduct taken into account to calculate a defendant's base offense level includes, among other things, "all acts and omissions committed" by the defendant, "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" that "occurred during the commission of the offense of conviction," and all harm that resulted from or was the object of the acts and omissions. U.S.S.G. § 1B1.3(a)(1)(A), (B), and (a)(3). In an offense involving contraband, a "defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." Id. comment. (n.2).

In this case, the district court did not clearly err in considering Suarez's own conduct under U.S.S.G. § 1B1.3 to determine that (1) his base offense level was

38, and (2) he was not entitled to safety-valve relief or a minor-role reduction. We recognize that the district court did not conclusively detail its findings as to drug amount, but this level of detail was unnecessary, since the amount for which Suarez was held accountable well exceeded 150 kilograms, and any amount over 150 kilograms rendered a base offense level of 38. Indeed, as the record shows, the district court properly could have used any of the following drug quantity amounts pursuant to § 1B1.3 to conclude that Suarez's base offense level was 38: (1) Suarez's own conduct of transporting more than $3.5 million in a truck on the day of his arrest, which translates to approximately 189 kilograms of cocaine using the conversion rate of $18,500 per kilogram according to the PSI, or approximately 159 kilograms using Suarez's proffered conversion rate of $22,000 per kilogram; or (2) his own conduct of transporting a total of 1,199 kilograms of cocaine and approximately $8.5 million in drug proceeds, based on drug ledgers seized from the stash house, which detailed activities of transporters named "Tabla" and "Cejas," and the trial testimony that Suarez either was "Tabla" or "Cejas." Because Suarez's own conduct of transporting, at minimum, approximately $3.5 million exceeds the equivalent of the 150 kilogram threshold under U.S.S.G. § 2D1.1(c)(1), the district court did not clearly err in finding that Suarez's base offense level was 38. See U.S.S.G. § 2D1.1(c)(1).

Nor did the district court clearly err by considering Suarez's own conduct -- of failing to provide truthful statements to the government and participating in the conspiracy as a transporter -- in denying him safety-valve relief and a minor-role reduction. As the record shows, the district court denied safety-valve relief because testimony from DEA agents during trial -- that (1) the truck Suarez rode in was parked continuously at the stash house until Suarez and his co-conspirator drove it away on October 17, 2007, and (2) Suarez and his co-conspirator did not stop the truck the entire time until they were pulled over by the police -- contradicted Suarez's assertions to the government. Similarly, the district court denied a minor-role reduction based on its finding that Suarez's own conduct as a transporter was integral to the conspiracy. Neither of these findings constitute clear error.

As for Suarez's reliance on out-of-circuit law criticizing U.S.S.G. § 1B1.3 as contrary to legislative intent, this argument fails because we have affirmed the application of § 1B1.3 in numerous prior cases. See Chavez, 584 F.3d at 1367-68 (holding that the district court did not clearly err in determining the drug quantity attributable to a defendant based on relevant conduct, which included the reasonably foreseeable acts of a codefendant); see also Castellanos, 904 F.2d at

1494-97 (rejecting a defendant's due process challenge to § 1B1.3). Thus, the district court properly applied § 1B1.3 in calculating Suarez's sentences.

**AFFIRMED.**