[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11077
Non-Argument Calendar

_____

D.C. Docket No. 8:18-cr-00205-WFJ-TGW-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILLIP USCANGA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 6, 2021)

Before MARTIN, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Phillip Uscanga, a federal prisoner currently incarcerated, appeals his

sentence of 144-months imprisonment for his conviction of one count of arson. He

argues that his sentence was substantively unreasonable because the district court

improperly analyzed both the 18 U.S.C. § 3553(a) sentencing factors and the facts of his case. After careful review, we conclude the district court did not abuse its discretion in sentencing Uscanga. We therefore affirm his sentence.

## I

According to Uscanga's presentence investigation report ("PSR"), on January 1, 2016, Uscanga and another person got into a fight with rival gang members at a gas station in Florida. Uscanga and two others then followed their rivals in a Ford Mustang to the home of Julio Tellez in Manatee County. After seeing their rivals go into Tellez's house, the group decided to drive by in the Mustang and shoot at the house, drawing their rivals out. The plan called for others in the group to drive behind the Mustang in another vehicle and shoot at anyone who came out of the house. The group carried out their plan, and one of Uscanga's codefendants shot and killed Tellez. Uscanga then decided they should burn the Mustang because it was evidence of the murder. The group poured gas on the Mustang, and one of Uscanga's codefendants lit his jacket and threw it on the vehicle, engulfing it in flames. Uscanga "admit[ted] to committing arson" but "maintain[ed] that he played no knowing part in any plan to shoot or murder anyone." Instead, Uscanga says he only thought there would be a fist fight at Tellez's house.

2

In 2018, a grand jury charged Uscanga and six codefendants with twelve counts related to a racketeering conspiracy. A superseding indictment added more charges. Altogether, Uscanga himself was charged with six counts: racketeering conspiracy, conspiracy to commit arson, arson, conspiracy to commit murder in aid of racketeering, murder in aid of racketeering, and use of a firearm during and in relation to a crime of violence. Uscanga ultimately pled guilty to one count of arson under 18 U.S.C. § 844(i), and the government dismissed the remaining five counts. In his plea agreement, Uscanga stipulated that he and his codefendants burned the Mustang after it was used in the drive-by shooting because it was evidence of the murder.

Uscanga's PSR applied a base offense level of 12 under United States Sentencing Guidelines § 2K1.4(a)(4). The PSR also applied a two-level increase under section 2K1.4(b)(1) because the arson was committed to conceal the murder of Tellez and a two-level reduction under section 3E1.1(a) for acceptance of responsibility. Based on a total offense level of 12 and a criminal history category of III, the PSR identified a guideline range of 15- to 21-months imprisonment. However, because the crime to which he pled guilty carried a five-year statutory mandatory minimum, it was greater than the guideline range's maximum, and the PSR set Uscanga's final guideline range as 60-months imprisonment.

Prior to sentencing, the district court sua sponte entered an order directing Uscanga's counsel to be prepared to address at sentencing why the court should not vary upward from the guideline range due to the totality of the circumstances; the nature of the activity shown by the dismissed charges; concealment of other offenses; physical injury; and that the actual offense is outside the heartland of offenses contemplated by the advisory guideline level.  The district court then sua sponte entered another order directing Uscanga's counsel to be prepared to show cause why Uscanga's base offense level should not be 38 for felony murder; why Uscanga did not participate in a conspiracy to commit aggravated assault which resulted in felony murder; and why the starting offense level should not be for accessory after the fact to first degree murder.  The district court also filed its own sentencing memorandum, in which it detailed the facts as established in Uscanga's case and in his codefendants' trial.

The district court ultimately determined the guideline range to be 60-months imprisonment.  At sentencing, however, the district court varied upward and sentenced Uscanga to 144-months imprisonment.  The court stated that even under Uscanga's version of the facts, he was "at a minimum" an accessory after the fact to murder.  And when Uscanga and his group went to commit an aggravated assault and "end[ed] up killing someone with a gun, [it was] a felony murder." The court also noted that "if anybody takes any message here, tell those people in

4

that neighborhood all this stuff has got to stop." In its statement of reasons, the district court said it varied upward for several considerations related to the nature and circumstances of the offense: Uscanga's mens rea, his extreme conduct, the dismissed/uncharged conduct, his role in the offense, and the fact that he had committed the arson to cover up a murder in aid of racketeering. The district court also varied upward to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and avoid unwarranted sentencing disparities among the defendants. It further noted that "[t]he Guidelines do not cover an arson of this purpose and magnitude."

The district court included an attachment to its statement of reasons to further explain why it varied upward. It observed that the "sentence accounts for the seriousness of the underlying offense and the dismissed charges, all of which led to the Defendant's arson." The district court noted that "[t]he testimony and evidence at the codefendants' trial placed Mr. Uscanga at all the major events on January 1, 2016, up to and including Mr. Tellez being murdered." It recounted those events in detail and said the arson offense was "intertwined with the criminal conduct shown." The district court recognized Uscanga's assertion that he thought they were only going to Tellez's house for a fist fight. But it said even under those facts, "that means Mr. Uscanga drove his gang to a gang fight where death

5

ensued." With the mandatory minimum for arson at 5-years imprisonment and the maximum sentence at 20 years, the court observed that Uscanga's sentence "falls below the middle" of those two limits and was "sufficient but not greater than necessary to comply with the purposes of sentencing." This is Uscanga's appeal.

## II

We review a district court's sentencing decision for abuse of discretion. United States v. Irey, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). Whether a sentence was substantively unreasonable depends on the totality of the circumstances, including whether the section 3553(a) factors support the sentence. United States v. Overstreet, 713 F.3d 627, 636 (11th Cir. 2013). A sentence may be substantively unreasonable if the district court selects the sentence arbitrarily, bases the decision on impermissible section 3553(a) factors, or fails to consider pertinent section 3553(a) factors. United States v. Pugh, 515 F.3d 1179, 1191–92 (11th Cir. 2008). "The weight to be accorded to any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotation marks omitted and alterations adopted). The party challenging the sentence has the burden of showing that the sentence was substantively unreasonable in light of the section 3553(a) factors and the record. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir.

2010). We will not reverse a sentence unless "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (quotation marks omitted).

## III

In our Court, Uscanga says his sentence was substantively unreasonable and thus the district court abused its discretion for three reasons. First, he argues that the district court improperly analyzed the various section 3553(a) factors. Second, Uscanga asserts that the district court selected his sentence arbitrarily. Third, he argues that his sentence was unreasonable based on the facts of his case.

As to Uscanga's first argument, we see no error in the way the district court evaluated the various sentencing factors. The district court explained that it varied upward and selected the sentence for a host of reasons based on the section 3553(a) factors and the record. The court made a finding that the Guidelines did not cover "arson of this purpose and magnitude," which made Uscanga an accessory after the fact to murder. Based on that finding, the district court considered the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. See 18 U.S.C. § 3553(a)(1)–(2)(A). The weight the district court gave

7

those factors is committed to its sound discretion.  See Amedeo, 487 F.3d at 832.

Uscanga says the district court improperly considered the dismissed charges for

racketeering and murder in considering these factors when the charges were

unsupported in the record.  He also says the district court improperly considered

facts from his codefendants' trials.  But the district court imposed the sentence

"viewing the facts as [Uscanga's] lawyer presented them."  To the extent the

district court relied on Uscanga's dismissed charges, "sentencing courts may

consider both uncharged and acquitted conduct in determining the appropriate

sentence."  United States v. Rushin, 844 F.3d 933, 942 (11th Cir. 2016) (quotation

marks omitted).  And to the extent the district court relied on facts from Uscanga's

codefendants' trials, sentencing courts can consider evidence presented at the trial

of a third person so long as the defendant is given the opportunity to rebut or cast

doubt on the reliability of that evidence.  See United States v. Castellanos, 904

F.2d 1490, 1496 (11th Cir. 1990).  The district court provided Uscanga with this

opportunity when it told him in advance of sentencing that it was considering

evidence from his codefendants' trial.

Neither did the district court err when it analyzed the factors concerning the

need to protect the public from further crimes of the defendant and the need to

afford adequate deterrence to criminal conduct.  See 18 U.S.C. § 3553(a)(2)(B)–

(C).  Contrary to Uscanga's assertion, the district court expressly noted Uscanga's

criminal history and said that his incarceration was needed to protect the public. It further stated that the sentence would "provide deterrence to others in this gang-ridden, high crime area of Manatee County who may seek to emulate" Uscanga's behavior. While Uscanga takes issue with the district court's statement at sentencing that "if anybody takes any message here, . . . all this stuff has got to stop," that statement supports the court's reliance on the factor related to deterrence of criminal conduct. See id. § 3553(a)(2)(B).

Uscanga's assertion that the district court failed to consider "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," id. § 3553(a)(4)(A), is unsupported by the record. The district court first determined Uscanga's guideline range but ultimately "imposed a sentence otherwise outside the sentencing guideline system" because the "Guidelines do not cover an arson of this purpose and magnitude." It separately noted that the "sentencing guidelines here would be the same if the Defendant stole eggs and burned down the ramshackle chicken coop to hide his crime" and thus "an upward variance is appropriate." These statements show the district court considered the Guidelines but found them insufficient based on other factors. We cannot "substitute our judgment in weighing the relevant factors." Amedeo, 487 F.3d at 832 (quotation marks omitted).

Uscanga says there are unwarranted sentencing disparities among the codefendants in this case, a result he argues is contrary to the factor concerning the need to avoid sentencing disparities.  See 18 U.S.C. § 3553(a)(6).  We note that the district court expressly considered and based its decision on this factor.  While the district court did not discuss the factor in any detail, it also wasn't required to do so.  See United States v. Kuhlman, 711 F.3d 1321, 1326 (11th Cir. 2013).  In any event, Uscanga does not identify any codefendants "with similar records who have been found guilty of similar conduct."  See 18 U.S.C. § 3553(a)(6).  While he notes that John Cintron, a codefendant, also pled guilty to arson, Uscanga acknowledges that Cintron received a shorter sentence on account of his juvenile status.

Uscanga's second argument as to why his sentence was substantively unreasonable is that the district court selected the sentence arbitrarily.  Uscanga says the district court based the sentence on its finding that when Uscanga and his group went to commit an aggravated assault and ended up killing someone, they committed felony murder.  According to Uscanga, there was no evidence he attempted to commit an aggravated assault.  In his view, this indicates "the district court knew it was going to vary upward" and shows the court's "personal predilection."  This record does not support the idea that the district court selected the sentence arbitrarily.  The district court reached its finding "[e]ven viewing the

10

facts as [Uscanga's] lawyer presented them." And the way Uscanga's lawyer presented the facts was that Uscanga went to Tellez's house thinking it was going to be a fist fight. Nonetheless, the district court also found that Uscanga was "at a minimum" an accessory after the fact to murder, which appeared to be an independent basis for the sentence.

Uscanga's last argument is that his sentence was substantively unreasonable based on the facts of the case. Even putting aside the facts Uscanga disputes and the dismissed charges, Uscanga expressly acknowledged in his plea agreement that he "decided to burn the red Mustang used in the shooting[] because it was evidence of the murder." The district court accepted Uscanga's characterization of the facts and found that Uscanga was an accessory after the fact to murder. On this record, Uscanga has not carried his burden of leaving us with the "definite and firm conviction that the district court committed a clear error of judgment" in selecting Uscanga's sentence. See Shaw, 560 F.3d at 1238 (quotation marks omitted).

**AFFIRMED.**

11