[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 11-14140

————————————————

D.C. Docket No. 1:10-cr-00025-RWG-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RANDY WILCHER

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(March 13, 2013)

Before DUBINA, Chief Judge, MARTIN, and ALARCÓN,[*] Circuit Judges.

PER CURIAM:

Appellant Randy Wilcher appeals his convictions and sentence for possession

with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(l), (b)(l)(C),

————————————————

[*] Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

and possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(l), 924(e)(1).  After a jury convicted Wilcher,[1] the district court sentenced Wilcher to 188 months imprisonment.  Wilcher raises five issues on appeal.  After carefully reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm the district court on all issues.

I

Wilcher first contends the district court erred in admitting statements made to officers—one by Wilcher and one by his ex-girlfriend, Laquandra Kilpatrick—that Wilcher slept in a bedroom where parole officers recovered a handgun during a search of Wilcher's residence.  As to the first statement, Wilcher argues the district court erred in admitting his statement because the prosecution failed to disclose its intent to use the statement at trial, in violation of Rule 16 of the Federal Rules of Criminal Procedure.  *See* Fed R. Crim. P. 16(a)(l)(A).[2]  The Government concedes that it violated Rule 16 by failing to disclose its intent to use Wilcher's statement, but argues the district court's admission of the statement was not plain error.

---

[1] The jury convicted Wilcher on two of the three counts the Government brought against him. The jury acquitted Wilcher of possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c).

[2] Rule 16 requires the government to disclose in advance the substance of any statements made by the defendant to a known government agent that the government intends to introduce at trial. *See* Fed. R. Crim. P. 16(a)(l)(A); *United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007).

Here, when the parole officer testified to Wilcher's statement, Wilcher did not contemporaneously object and instead raised his Rule 16 objection after the next court recess.  Consequently, we reverse only if the district court's admission of this statement was plainly erroneous.[3]  *See United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007) (applying plain error review where defendant "had ample opportunity to lodge a[n] . . . objection during the two direct examinations at issue but did not").  Absent a contemporaneous objection or other prior notification by Wilcher to the district court that this statement was not disclosed properly, the Government's failure to disclose would not have been obvious to the district court when it considered the statement's admissibility.  *See United States v. Olano*, 507 U.S. 725, 734 (1993) (noting that a "plain" error is one that is "obvious").  The district court accordingly did not commit plain error by admitting the officers' testimony about Wilcher's statement, despite the Government's admitted failure to disclose that statement.  *See id.*

Wilcher next argues the district court erred by admitting Kilpatrick's statement to officers that Wilcher slept in the bedroom where officers discovered the handgun.  Wilcher argues the statement is inadmissible hearsay.  We disagree.

---

[3] Where a defendant contemporaneously objects to violation for Rule 16, evidentiary rulings based on that violation are reviewed for an abuse of discretion.  *See United States v. Perez*, 960 F.2d 1569, 1572 (11th Cir. 1997).

3

We review a district court's ruling on the admissibility of evidence for abuse of discretion, and evidentiary rulings will be overturned only if the moving party establishes that the ruling resulted in a "substantial prejudicial effect." *Judd v. Rodman*, 105 F.3d 1339, 1341 (11th Cir. 1997).

According to Rule 801 of the Federal Rules of Evidence, hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 80l(c). Out-of-court statements offered for a reason other than their truth are not hearsay, however, and their admission consequently is not barred by Rule 802 of the Federal Rules of Evidence.[4] *See United States v. Arbolaez*, 450 F.3d 1283, 1290 (11th Cir. 2006). An out-of-court statement may be admitted to explain why officers conducted a particular investigation if the statement is "relevant to explain[ing] the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement." *See United States v. Baker*, 432 F.3d 1189, 1209 n.17 (11th Cir. 2005).

---

[4] Rule 802 provides that hearsay is inadmissible unless it falls under a statutory or rule-based exception.

4

Although Kilpatrick's statement was made by an out-of-court declarant, the district court admitted the statement to explain why officers searched the bedroom of Wilcher's house rather than to prove that Wilcher possessed the firearm. *See United States v. Jiminez*, 564 F.3d 1280, 1287 (11th Cir. 2009) (allowing an out-of-court statement to explain an officer's conduct). To avoid the danger of unfair prejudice, the district court instructed the jury that the statement was not admissible for the truth of the matter asserted (that Wilcher slept in the bedroom), but rather to demonstrate the officers' conduct. Thus, the district court did not abuse its discretion in admitting Kilpatrick's statement.

Finally, even assuming *arguendo* that the court did err in admitting Kilpatrick's statement, the error was harmless. To be harmless, an error must not have affected the defendant's substantial rights. *See Olano*, 507 U.S. at 734–35. Here, the record reveals additional unchallenged and properly admitted evidence that demonstrated that Wilcher possessed the firearm. The record shows that Wilcher lived in the house where the handgun was found. Further, the Government offered testimony and presented photographic evidence that a box containing Wilcher's documents was recovered from the bedroom and that Wilcher's clothing was in the closet of the same bedroom. An officer also testified that while he was

5

transporting Wilcher, Wilcher said he saw the handgun on the morning of the search and placed it "underneath his mattress." This evidence, taken together, constituted sufficient evidence that Wilcher had constructive, if not actual, possession of the gun. *See United States v. Molina*, 443 F.3d 824, 829–30 (11th Cir. 2006) (holding a jury may infer that a defendant had constructive possession over objects found in his or her residence); *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2001) (holding a defendant has constructive possession over an object when he knows of the object's presence and has the ability and intent to exercise dominion and control over the object).

## II

Wilcher next argues that the Government improperly elicited expert testimony from Officer Daniel Arrugueta, who was not qualified as an expert under Rule 702 of the Federal Rules of Evidence. We need not reach the issue of whether the district court erred in allowing Officer Arrugueta to testify as a lay witness because admission of his testimony was invited by defense counsel's statement to the court that Officer Arrugueta could testify as a lay witness regarding "whether the packaging is consistent with his experience as being for the purpose of sale."

## III

6

Next, Wicher claims the district court erred by not giving his requested mere presence and mere association instructions to the jury. We disagree.

A district court's refusal to give an instruction that is supported by the evidence is reversible only if the proposed instruction was not substantially covered by other instructions given by the district court. *See United States v. Paradies*, 98 F.3d 1266, 1286 (11th Cir. 1996) (holding that failure to give an instruction "is reversible error if (1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself"). The district court did not abuse its discretion in rejecting Wilcher's proposed theory of defense instruction, which read, in relevant part:

> The Defense contends that Mr. Wilcher had no knowledge of the heroin and the firearm. . . . Knowledge is an essential element of each of the three counts in the indictment. . . . Simply being present at the scene of the event, . . . or merely associating with certain people, . . . does not establish that Mr. Wilcher knowingly possessed the heroin or the firearm.

The district court instructed the jury that "possession of a thing occurs if a person knowingly has direct physical control of it" or "if a person doesn't have possession

7

of it but has the power and the intention to take control of it later." The district court's instruction substantially covered the proposed defense instruction that a defendant's knowledge of the existence of contraband items could not be inferred from physical proximity alone. *See United States v. Rojas*, 537 F.2d 216, 219–20 (5th Cir. 1976) (holding that a virtually identical instruction to the one given by the district court here covered a proposed defense instruction regarding mere presence). The district court did not abuse its discretion in denying the requested defense instructions.

## IV

Finally, Wilcher contends that the district court erred in imposing an enhanced sentence pursuant to 18 U.S.C. § 924(e)(1), the Armed Career Criminals Act ("ACCA"), which mandates a sentencing enhancement where a person is convicted of possession of a firearm by a convicted felon and "has three previous convictions by any court . . . for a violent felony or serious drug offense, or both," committed on separate occasions. *See* 18 U.S.C. § 924(e)(1). We review de novo whether a conviction is a qualifying one under the ACCA. *See United States v. Day*, 465 F.3d 1262, 1264 (11th Cir. 2006).

Under the ACCA, a "serious drug offense" includes "an offense under State law, involving . . . possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  Wilcher admits that two of his previous convictions qualify as "serious drug offenses" under the ACCA, but argues the district court erroneously classified a third conviction as a serious drug offense.  Wilcher contends the third conviction was for mere possession.  Although Wilcher was charged in the indictment with possession of cocaine and marijuana with intent to distribute, the judgment does not unambiguously indicate that the convictions were serious drug offenses because they do not state which provision of the Georgia statute Wilcher violated.

Nevertheless, the district court did not err in imposing an enhanced sentence pursuant to the ACCA because Wilcher's third conviction was for a serious drug offense.  *See Shepard v. United States*, 544 U.S. 13, 16 (2005) (holding a district court generally may consider only the "statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.").  Here, the district court relied

9

on the judgment and the indictment,[5] which are permissible sources of information under *Sheppard*. As indicated by the judgment, Wilcher pled guilty to Count 1 of the indictment, which charged Wilcher with "unlawfully possess[ing] . . . Cocaine . . . with intent to distribute said drug." That crime bears a maximum punishment of up to thirty years imprisonment. *See* O.C.G.A. § 16-13-30(d). Nothing in the judgment indicates that Wilcher's conviction differed from the charges in the indictment. Because the charging document and the judgment reflect that Wilcher's conviction was for possession with intent to distribute a controlled substance and carried a maximum penalty of ten years or more, Wilcher's sentence was eligible for enhancement under the ACCA.

**AFFIRMED.**

---

[5] Wilcher contends the plea colloquy indicates he pleaded guilty to mere possession, not to possession with intent to distribute. Though somewhat unclear, the plea colloquy does not indicate unambiguously that Wilcher pleaded guilty to mere possession.

MARTIN, Circuit Judge, dissenting:

The errors made in this case were consequential both in number and in substance to such an extent that, even construing the evidence in favor of the government, I have no assurance that Mr. Wilcher would have been convicted without them.  For that reason, I respectfully dissent.

## I.    Expert Testimony Disguised as Lay Testimony

The error that strikes me hardest is that the government was allowed to elicit expert testimony from a lay witness at trial.  The government did not identify ATF[1] Agent Daniel Arrugueta as one of its witnesses—expert or otherwise, before Mr. Wilcher's trial was underway.[2]  Because Agent Arrugueta was not identified as an expert witness, the defense never got a summary of his testimony as required by Federal Rule of Criminal Procedure 16(a)(1)(G).[3]  The Rule 16 summary of expert

---

[1] The U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives is commonly referred to as ATF.

[2] The government's pretrial witness list appears on the District Court docket at 75.  Agent Arrugueta's name is not on it.

[3] Rule 16(a)(1)(G) provides in part: "At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  Fed. R. Crim. P. 16(a)(1)(G).  Thus by tendering Agent Arrugueta's testimony as a lay witness, pursuant to Rule 701, the government was able to bypass the requirement for a written summary of his testimony before trial.

The parties have not presented us with any dispute about whether Mr. Wilcher had requested a summary of any expert testimony which the government intended to present at trial. The Pretrial Order entered by U.S. Magistrate Judge Linda Walker set out that "[u]pon request of

testimony allows the court and the opposing party to scrutinize the proposed expert's qualifications and testimony; gives the court the ability to perform its gatekeeping role in determining what testimony is reliable, relevant and proper for a jury to hear, see Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999); and enables the opposing party to prepare his own rebuttal expert if desirable.  Notwithstanding the requirements governing the presentation of expert witnesses, under both the Federal Rules of Criminal Procedure and Evidence, the government was permitted to call on this ATF Agent to offer specialized knowledge of practices employed in the heroin trade, based upon his experience as a law enforcement agent, and not his participation in or knowledge of Mr. Wilcher's case.

When we heard oral argument for this appeal, one of the Assistant United States Attorneys who tried the case for the government told us that the government did not qualify Agent Arrugueta as an expert for strategic reasons.[4]  This is a clear violation of Rule 16, fulfilling the express concerns of the advisory committee,

---

the defendant, the government is required to provide the names of all expert witnesses, along with other information and materials required by FED. R. CRIM. P. 16(a)(1)(F) and (G) and FED. RS. EVID. 702, 703, and 705."  Judge Walker's Order also directed counsel not to file motions seeking discovery materials, because the government "ordinarily has no basis upon which to object" to complying with Rule 16.

[4] At 26 minutes and 59 seconds of the oral argument tape, the government's trial counsel was asked "why didn't you qualify him as an expert?" and answered "It was simply a strategic . . . it was strategy."  Counsel also stated that Agent Arrugueta's testimony was not expert testimony.

which amended Federal Rule of Evidence 701 in 2000 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note. This court has recognized the same concern. United States v. Jayyousi, 657 F.3d 1085, 1102 (11th Cir. 2011).

A review of the testimony makes it clear that Agent Arrugueta gave expert testimony.[5] Agent Arrugueta was questioned about his years of experience as a law enforcement officer, as well as his training and experience with narcotics identification and investigation. Before testifying about the specifics of Mr. Wilcher's case, the government elicited testimony from Agent Arrugueta about the "hundreds" of drug trafficking investigations in which he had been involved. He testified on a Wednesday, and acknowledged that he had no knowledge of Mr. Wilcher's case before Monday of that same week. The Assistant United States Attorney then asked Agent Arrugueta "[b]ased on your experience conducting those investigations, have you become familiar with items used to facilitate heroin distribution?" This question was followed by a similar one: "Agent Arrugueta, based on your experience gained through 25 years as a law enforcement officer conducting drug investigations, have you formulated an opinion as to whether the

_____

[5] To be clear, I do not question Agent Arrugueta's expertise. I merely say that if he was going to testify as an expert, he should have been tendered as an expert and a summary of his testimony provided in accordance with Federal Rule of Criminal Procedure 16.

13

evidence that you inspected is indicative of drug distribution?" Then Agent Arrugueta proceeded to testify, based on the photographs taken of Mr. Wilcher's home handed to Agent Arrugueta on the witness stand, that the evidence found in the house was "indicative of drug distribution."

The government's use of Agent Arrugueta as a lay witness—particularly when done for strategic reasons—flies in the face of our precedent. We have approved use of law enforcement agents as expert witnesses in criminal prosecutions. See, e.g., United States v. Garcia, 447 F.3d 1327, 1334–35 (11th Cir. 2006). We have also permitted the use of a law enforcement agent to testify as a lay witness where he does not rely upon his expertise or express any expert opinion. United States v. Hamaker, 455 F.3d 1316, 1331–32 (11th Cir. 2006) ("To prepare for his testimony, [FBI Agent] Odom simply added and subtracted numbers from a long catalogue of MCC records, and then compared those numbers in a straightforward fashion . . . . Therefore, Odom's testimony was permissible lay testimony under Rule 701 of the Federal Rules of Evidence."). While we have allowed a police officer to testify as a lay witness based on his experience, we have explained his testimony must not be based on specialized knowledge. Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd., 320 F.3d 1213, 1223 (11th Cir. 2003). In fact, we have called it "error to admit opinion testimony of lay

14

witnesses based on specialized knowledge." United States v. Dulcio, 441 F.3d 1269, 1275 (11th Cir. 2006). Thus, what happened with Agent Arrugueta in Mr. Wilcher's case should not have happened.

The majority does not decide whether admission of Agent Arrugueta's testimony was error, because they say even if it was error, it was invited in any event. I do not read the transcript to show that defense counsel invited the error. Indeed, she began making her objection to Agent Arrugueta's testimony, ("Well, let me state my objection"), and was interrupted by the court. It is true that when she spoke again, she acknowledged that another ATF Agent had already testified that the packaging of the narcotics found in Mr. Wilcher's house was consistent with packaging for sale, and that she had not objected to that testimony.[6] She noted that the testimony of Agent Arrugueta would be cumulative for that reason. However, defense counsel also repeatedly asked to discuss the issue outside of the confines of a side bar.[7] The District Judge appeared to acquiesce in defense counsel's requests, by calling for a brief recess, but after leaving the bench, quickly returned, continued

---

[6] In fact, the previous government witness twice testified that the heroin was "packaged for sale."

[7] She said "[s]ounds like it's going further than maybe a whispered conversation can cover"; "[n]ow we are going even further than we ever talked about going"; and "[w]e need to go beyond a side bar at this point."

15

the side bar conversation, and ruled that he would allow Agent Arrugueta to testify to the full scope of information which the government sought to elicit from him.[8]

I simply do not read the exchange surrounding defense counsel's objection to Agent Arrugueta as inviting error. To begin, Agent Arrugueta testified well beyond the issue of packaging.[9] But the more important point is that this on-the-fly exchange demonstrates the danger of what can happen during a trial if the District Court has been preempted from carrying out its role as the gatekeeper of expert testimony. The majority opinion rewards the government's acknowledged strategic decision to proffer Agent Arrugueta's testimony as lay testimony. In doing so, we are creating an incentive that is at odds with our precedent; edges our lauded adversarial judicial process towards a system of trial by ambush; and ignores the thoughtful efforts of the Advisory Committee for the Federal Rules of Evidence regarding expert witnesses.

---

[8] During the trial, the government first told the court and defense counsel that Agent Arrugueta would testify regarding his familiarity with the items used in drug trafficking. Next, the government said Agent Arrugueta would describe the packaging of the drugs and the items seized from a particular box, and also "testify about firearms and how firearms are a common thread with narcotics." Finally, the government told the court and defense counsel that Agent Arrugueta would testify to "the entirety of the physical evidence."

[9] In addition to testifying that the heroin was packaged for distribution, Agent Arrugueta testified about the need for scales in a narcotics distribution operation; identified Mannitol and described its use as a cutting agent for heroin; the need for a mask to protect against inhaling the heroin powder and Mannitol; the use for a razor blade in handling heroin; the use for a "fingernail tool" in handling heroin; that the money found in the house was drug proceeds; and that he regularly encounters firearms in his drug investigations, because drug distributors keep firearms for their safety and the preservation of their business.

16

## II.    Rule 16 Violation and Hearsay

Before Mr. Wilcher's trial, the Assistant United States Attorney in charge of the prosecution told defense counsel that the government would not be introducing any statements made by Mr. Wilcher.  That the government made this promise is little short of bewildering to me, insofar as Mr. Wilcher is purported to have told officers that he had placed a handgun underneath the mattress, and this was the gun that was the subject of the criminal charges against him.  Nevertheless, neither party disputes that the government did make this promise, or that Mr. Wilcher's lawyer relied upon the promise when she made her opening statement to the jury.  Yet, by the time the trial was over the government had introduced at least two statements purportedly made by Mr. Wilcher and this testimony came from three separate witnesses.  The government acknowledges it violated Rule 16 of the Federal Rules of Criminal Procedure by failing to give pretrial notice of at least one of these statements.[10]

---

[10] In addition to the part of the Rule addressing expert testimony, Federal Rule of Criminal Procedure 16 also requires that once a defendant asks (as I understand Mr. Wilcher did here), the government "must" disclose the substance of any oral statement made by the defendant, either before or after his arrest, when that statement was made in response to the questions from a person who the defendant knew was a government agent. Fed. R. Crim. P. 16(a)(1)(A).  To be clear about the violation acknowledged by the government, it had disclosed Mr. Wilcher's statement to law enforcement officers about putting the gun under the mattress.  As I mentioned, the government had advised Mr. Wilcher they would not introduce that statement at trial.  The government had not, however, disclosed that Mr. Wilcher made any statements during the search of the house about where the gun and drugs were found, about which room he lived in, or anything else.

17

The government advises us that its lawyers were surprised the first time one of their witnesses mentioned a statement made by Mr. Wilcher during the search. Trials involve human beings, and this type of thing certainly happens. However, after this unexpected testimony came into evidence, the government went on to ask questions that caused it to be repeated as many as three more times and then highlighted this testimony during its closing argument. I do not perceive the subsequent solicitations of these statements as any less of a violation of Rule 16 simply because the first one happened inadvertently.

It is our obligation to enforce the rules of evidence and criminal procedure. Federal prosecutors are, based upon my many years of observing them, talented and capable lawyers. They do not require our leniency if they fail to play by the rules. By extending such leniency, we invite them to relax from being the careful lawyers they are capable of being. I believe there should be a cost to the government for the Rule 16 violations they acknowledge they committed here. This is particularly true when combined with the government's strategic decision not to qualify Agent Arrugueta as an expert witness. As I have made clear, I view this as another Rule 16 violation.

I also part ways with the majority on some of their conclusions regarding the question of whether hearsay was erroneously admitted into evidence. For example,

18

the majority says there was no error in admitting Mr. Wilcher's statement that he slept in a specific bedroom where the gun was found, because it was admitted only "to explain why officers searched the bedroom of Wilcher's house rather than to prove that Wilcher possessed the firearm," and therefore the testimony was not hearsay.  Maj. Op. 4.  This simply contradicts my reading of the record.

The jury heard first from the government's witness, Officer Rieken, that Mr. Wilcher told officers he lived in a certain bedroom.  Officer Rieken gave this testimony in response to the prosecutor's questions.  Officer Rieken was first asked: "how were you able to make the determination of which rooms to search on the morning of November 24th, 2009?"  The next question to Officer Rieken was: "Did any of the occupants direct your attention to the bedroom where the Defendant stayed?"  The third question to Officer Rieken was:  "My question for you is how, if at all, were you able to make a determination that the Defendant used the bedroom in the residence?"  The fourth question to Officer Rieken was: "Just to clarify, did the Defendant himself tell you anything about where he stayed at that house?"  Then with a different government witness, Officer Morrow, the question was "what, if anything, were you able to determine about the living arrangements of the occupants in the house?"  I do not read any of these questions, with the possible exception of the first one to Officer Rieken, to indicate the least bit of interest in

19

why the officer did what he did. Rather they indicate a real and barely disguised interest in proving that Mr. Wilcher lived in the specific bedroom where the gun was found. Thus, I would not find, as the majority has, that this testimony from these officers was not hearsay because it was offered only for the purpose of explaining their conduct.

### III.   Conclusion

The errors made during Mr. Wilcher's trial may each independently have been harmless. However, there is a point at which harmless errors accumulate to such an extent they do harm.

Looking at the trial as a whole, Mr. Wilcher was never given the chance to scrutinize the qualifications and testimony of a key witness presenting expert testimony in violation of the Federal Rules of Evidence and Criminal Procedure. He was blindsided by the introduction of his own statements to law enforcement in violation of the Federal Rules of Criminal Procedure, and then repeatedly incriminated through the repetition of those statements. He was linked to a gun through the repeated, improper introduction of hearsay statements. Considering all of this, I cannot say that Mr. Wilcher had a fundamentally fair trial. See United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997) ("In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the

20

appellant was afforded a fundamentally fair trial.").  Neither am I without doubt about whether these errors affected the outcome of Mr. Wilcher's case.  See United States v. Frazier, 387 F.3d 1244, 1266 n.20 (11th Cir. 2004) (en banc) ("Errors do affect a substantial right of a party if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case.").

Mr. Wilcher may very well be guilty of the crimes for which he was convicted.  However, he is entitled to be convicted according to the Rules of Evidence and Criminal Procedure.  It is our job to enforce those rules.  I would reverse Mr. Wilcher's convictions because they were not followed here.